IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DISTRICT

| | | |
|---|---|---|
| MATTHEW LAYTON<br>137 East Walnut Street<br>Wadsworth, Ohio 44281<br><br>    Plaintiff,<br><br>   v.<br><br>TESLA, INC.<br>5180 Mayfield Road<br>Lyndhurst, Ohio 44124<br><br> **Serve also:**<br> Tesla, Inc.<br> c/o CT Corporation System<br> 4400 Easton Commons Way<br> Suite 125<br> Columbus, Ohio 43219<br><br>  -and-<br><br>CHRISTOPHER STANTON<br>6765 Center Road<br>Valley City, Ohio 44280<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff, Matthew Layton, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

## PARTIES

1. Layton is a resident of the city of Wadsworth, county of Medina, state of Ohio.

2. Tesla, Inc. ("Tesla") is a foreign corporation that operated a business located at 5180 Mayfield Road, Lyndhurst, Ohio 44124.

3. Tesla was at all times hereinafter mentioned an employer within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 126 § 12101 *et seq.*

4. Tesla was at all times hereinafter mentioned an employer within the meaning of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

5. Tesla was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

6. Upon information and belief, Defendant Christopher Stanton is a resident of the state of Ohio.

7. Stanton made and/or participated in the adverse actions asserted herein.

8. Stanton was at all times hereinafter mentioned an employer within the meaning of the FMLA.

## JURISDICTION & VENUE

9. This Court had federal question subject matter jurisdiction to 28 U.S.C. § 1331 as Layton is alleging federal law claims under 29 U.S.C. § 2601 *et seq.*, the FMLA, and 42 U.S.C. 126 § 12101 *et seq.*, the ADA.

10. This Court has personal jurisdiction has personal jurisdiction over Tesla because it is a foreign corporation that is registered to conduct business in this District, and at all times material to the allegations contained herein, each conducted substantial business in this District and had sufficient minimum contacts within this District.

11. All of the material events alleged in this Complaint occurred in Cuyahoga County.

12. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391, because it is the district court of the district, division, and county within which Tesla operated and where a substantial part of the events or omisisons giving rise to the claim occurred.

13. Within two years of the conduct alleged below, Layton dual-filed Charges of Discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity

Commission ("EEOC"), Charge Nos. CLEB4(48083)11232002; 22A-2023-01106 and CLEE4(48084)11232022; 22A-2023-01107.

14. On or about April 6, 2023, the OCRC issued and mailed a Notice of Right to Sue letter to Layton regarding the Charges of Discrimination brought by Layton.

15. On or about July 3, 2023, the EEOC issued and mailed a Notice of Right to Sue letter to Layton regarding the Charges of Discrimination brought by Layton.

16. Layton received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. 126 § 12101 *et seq.* – which has been attached hereto as Plaintiff's Exhibit A.

17. Layton received his Right to Sue letter from the OCRC in accordance with R.C. § 4112.052 – which has been attached hereto as Plaintiff's Exhibit B.

18. Layton has properly exhausted his administrative remedies pursuant to 29 C.F.R § 1614.407(b).

19. Layton has properly exhausted his administrative remedies pursuant to R.C. § 4112.051.

20. Layton has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter from the EEOC.

21. Layton has timely filed this Complaint within the relevant statute of limitations pursuant to R.C. § 4112.052.

## FACTS

22. Layton is a former employee of Tesla.

23. Layton began working for Tesla on or around January 18, 2021.

24. Tesla employed Layton as a Service Technician.

25. At all times material herein, Layton was qualified for his position as a Service Technician.

26. On or around March 7, 2022, Layton requested leave for the birth of his daughter.

27. Tesla is subject to the provisions of the FMLA.

28. As of March 7, 2022, Layton qualified for the protected leave under the FMLA.

29. As of March 7, 2022, Layton worked for Tesla for at least 12 months.

30. As of March 7, 2022, Layton had at least 1,250 hours of service for Tesla during the previous 12 months.

31. As of March 7, 2022, Layton was entitled to utilize FMLA leave for the birth of his daughter.

32. Starting on March 7, 2022, Layton took leave under the FMLA for the birth of his daughter.

33. On or around March 28, 2022, Layton returned to work following his leave under the FMLA.

34. Shortly after Layton returned from FMLA leave, Stanton became Layton's supervisor.

35. Stanton was Layton's immediate supervisor.

36. During all material events asserted herein, Stanton has and/or had authority to hire, fire, and/or discipline employees.

37. Stanton did not participate in the decision to hire Layton.

38. On or around May 10, 2023, Layton inquired with Stanton about taking more leave under the FMLA due to complications stemming from his daughter's birth.

39. Immediately after Layton put Stanton on notice that he wanted to use more FMLA leave, Defendants placed Layton under investigation.

40. Defendants placed Layton under investigation in retaliation for inquiring about further FMLA leave.

41. During her birth, Layton's daughter suffered from complications that would require intensive further medical treatment.

42. Layton's daughter's medical issues constituted physical impairments.

43. Layton's daughter's medical issues substantially impaired one or more of her major life activities.

44. As a result of Layton's daughter's medical issues, she is disabled.

45. During the course of his employment, Layton informed Stanton of his daughter's disabling condition.

46. Layton informed Stanton of the need to take further FMLA leave to help care for his disabled daughter and attend her doctor's appointments.

47. On or around June 7, 2022, Layton contacted Sedgwick, Tesla's third-party leave administrator, about further FMLA leave.

48. On or around June 17, 2022, Sedgwick approved Layton's FMLA request.

49. On or around June 17, 2022, Defendants terminated Layton's employment.

50. Defendants terminated Layton's employment in retaliation for requesting further FMLA leave.

51. Defendants terminated Layton's employment because of his daughter's disability.

52. By terminating his employment, Defendants interfered with Layton's ability to utilize the FMLA leave that he was approved for.

53. Upon information and belief, Defendants have a progressive disciplinary policy ("Progressive Discipline Policy").

54. Defendants have used the Progressive Discipline Policy when disciplining employees who have not requested FMLA leave.

55. Defendants have used the Progressive Discipline Policy when disciplining employees who do not have disabled children.

56. Under the Progressive Discipline Policy, Layton had not received any meaningful discipline.

57. Under the Progressive Discipline Policy, Layton had not received any written warnings.

58. Under the Progressive Discipline Policy, Layton had not been suspended.

59. Defendants skipped steps under the Progressive Discipline Policy when they terminated Layton's employment.

60. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

61. Skipping steps under the Progressive Discipline Policy is an adverse action.

62. Defendants intentionally skipped steps under the Progressive Discipline Policy when they terminated Layton's employment.

63. Defendants willfully made the decision to skip steps under the Progressive Discipline Policy when they terminated Layton's employment.

64. Terminating Layton's employment was an adverse employment action.

65. Terminating Layton's employment was an adverse action.

66. Defendants intentionally terminated Layton's employment.

67. Defendants willfully made the decision to terminate Layton's employment.

68. Defendants terminated Layton's employment in violation of the Progressive Discipline Policy because he requested further FMLA leave.

69. Defendants terminated Layton's employment in violation of the Progressive Discipline Policy because of his daughter's disability.

## COUNT I: RETALIATION IN VIOLATION OF THE FMLA

70. Layton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

71. Tesla is subject to the provisions of the FMLA.

72. As of March 7, 2022, Layton qualified for protected leave under the FMLA.

73. As of March 7, 2022, Layton worked for Tesla for at least 12 months.

6

74. As of March 7, 2022, Layton had at least 1,250 hours of service for Tesla during the previous 12 months.

75. As of March 7, 2022, Layton was entitled to utilize FMLA leave for the birth of his daughter.

76. During his employment, Layton utilized FMLA leave.

77. After utilizing FMLA leave for the birth of his daughter, Layton notified Stanton of his intention to use further FMLA leave.

78. After Layton notified his supervisor of his intention to use further FMLA leave, Defendants retaliated against him.

79. Defendants retaliated against Layton by placing him under investigation.

80. On or aound June 7, 2022, Layton applied for further FMLA leave.

81. After Layton applied for further FMLA leave, Defendants retaliated against him.

82. Defendants retaliated against Layton by terminating his employment.

83. Defendants willfully retaliated against Layton in violation of U.S.C. § 2615(a).

84. As a direct and proximate result of Defendants' wrongful conduct, Layton is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

### COUNT II: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

85. Layton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

86. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

87. Tesla is subject to the provisions of the FMLA.

88. As of June 17, 2022, Layton qualified for protected leave under the FMLA.

89. As of June 17, 2022, Layton worked for Tesla for at least 12 months.

90. As of June 17, 2022, Layton had at least 1,250 hours of service for Tesla during the previous 12 months.

91. As of June 17, 2022, Layton was entitled to utilize FMLA leave to care for his daughter's medical conditions.

92. During his employment, Layton attempted to request FMLA leave by asking Defendants if he qualified to take FMLA leave.

93. On June 17, 2022, Sedgwick approved Layton for further FMLA leave to care for his daughter's medical conditions.

94. The same day of his approval for FMLA leave, Defendants terminated Layton's employment.

95. Defendants unlawfully interfered with Layton's exercise of his rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

96. Defendants violated section 825.300(c)(1) of the FMLA and interfered with Layton's FMLA rights when Defendants did not honor Layton's approved use of FMLA leave.

97. As a direct and proximate result of Defendants' conduct, Layton is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

### COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. 126 § 12101 *et seq.*

98. Layton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

99. Layton's daughter suffers from medical conditions stemming from her birth.

100. Layton's daughter's condition constituted a physical impairment.

101. Layton's daughter's condition substantially impaired one or more of her major life activities.

102. Layton's daughter is disabled.

103. During his employment, Layton disclosed his daughter's disability to Stanton.

104. During his employment, Layton informed Stanton that he would need to take leave to care for his daughter's condition, including attending her doctor's appointments.

105. On or about June 17, 2022, Defendants terminated Layton's employment without just cause.

106. Defendants terminated Layton's employment based his daughter's disability.

107. Defendant violated 42 U.S.C. 126 § 12101 *et seq.* when it discharged Layton based on his daughter's disability.

108. Defendants violated 42 U.S.C. 126 § 12101 *et seq.* by discriminating against Layton based on his daughter's disabling condition.

109. Layton suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq*.

110. As a direct and proximate result of Defendants' conduct, Layton suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT IV: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION IN VIOLATION OF R.C. § 4112.02(J)

111. Layton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

112. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

113. Stanton aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory treatment of Layton.

114. Stanton aided, abetted, incited, coerced, and/or compelled Tesla's discriminatory termination of Layton.

115. Stanton violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

116. Layton suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

117. As a direct and proximate result of Defendants' conduct, Layton has suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

WHEREFORE, Layton demands from Defendants the following:

(a) Issue an order requiring Defendants to restore Layton to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Layton for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Layton's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Taurean J. Shattuck*
Taurean J. Shattuck (0097364)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  Taurean.Shattuck@spitzlawfirm.com

*Attorney For Plaintiff*

## **JURY DEMAND**

Plaintiff Matthew Layton demands a trial by jury by the maximum number of jurors permitted.

                                                  */s/ Taurean J. Shattuck*
                                                  Taurean J. Shattuck (0097364)
                                                  **SPITZ, THE EMPLOYEE'S LAW FIRM**